**Jose DE OLIVEIRA, Jr., as Executor of the Estate of Serafina de Oliveira, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 84–2477.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1985.

Decided Aug. 7, 1985.

---

John M. Youngquist, San Francisco, Cal., for plaintiff-appellant.

Steven I. Frahm, Michael L. Paup, Glenn L. Archer, Jr., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SNEED and BEEZER, Circuit Judges, and STEPHENS,* District Judge.

SNEED, Circuit Judge:

Jose de Oliveira, Jr., executor of the estate of Serafina de Oliveira, appeals from a judgment entered in proceedings for the determination of entitlement to an estate tax refund. The district court held that estate taxes were properly assessed against Serafina's estate and granted the Internal Revenue Service's (IRS) motion for summary judgment. The district court had jurisdiction under 28 U.S.C. § 1346(a)(1). This court has jurisdiction over the executor's timely appeal under 28 U.S.C. § 1291. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

Jose de Oliveira, Sr. (the testator) died testate in 1956. His last will and testament created a testamentary trust to hold his half of the community property and named his wife, Serafina, as lifetime beneficiary and trustee. The will also gave the trustee certain powers. The nature and scope of those powers are the principal matters of dispute between the parties in this action.

In 1972, Serafina executed a document entitled "Power of Attorney." Under that document Serafina agreed to confer with the family members and to abide by a majority vote on any proposed sale, lease, loan or transaction regarding any of the family property.

Serafina died testate in 1978. Her son, Jose Jr., was appointed executor of her estate. A timely federal estate tax return was filed for the estate. This return did not include as assets of the estate the property in the testamentary trust established by the testator, Jose Sr.

On audit, the IRS determined that the provisions of the testator's will creating the

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

trust gave Serafina the power, exercisable in favor of herself, to consume, appropriate, or dispose of the corpus of the trust. Based on this determination the IRS concluded that Serafina possessed a general power of appointment and that the trust assets were required to be included in her gross estate for estate tax purposes under the provisions of 26 U.S.C. § 2041.

In February 1982, the executor paid the assessed deficiency plus penalties and interest in the total sum of $179,893.91. On September 16, 1982 he filed a claim for refund of this sum in district court. The parties then filed cross-motions for summary judgment. On July 9, 1984, the district court granted the government's motion and on July 23, 1984, entered judgment for the government.

The provisions of the testator's will that gave rise to this dispute are the sixth, seventh, and ninth paragraphs.

Paragraph six reads in part:

> Said estate to be held and administered thereafter by said Trustee in trust ...
>
> a) *for the benefit of my said wife* so long as she lives,
>
> b) with all the powers and subject to the conditions specifically designated hereinafter in paragraph Ninth for my said Trustee and/or Executrix.
>
> c) and shall continue until the death of my said wife. Upon the death of my said wife, this trust to cease and terminate and all the rest, residue and remainder of my trust estate I hereby give, devise and bequeath to my ten children....

(emphasis added).

Paragraph nine gives the trustee various powers "[i]n addition to any inherent or

implied or statutory powers" and places no limitations on the use of the trust assets.[1]

Paragraph seven contains the following language: "I hereby direct that *all provisions for support herein* are intended to take effect as of the date of my death." (emphasis added).

## II.

### DISCUSSION

To determine whether the trust assets were properly included in Serafina's gross estate, we must determine whether the testator's will created a general power of appointment in the trustee (Serafina), and, if so, whether this power was terminated by Serafina's execution of the "Power of Attorney" document in a manner that removed the trust assets from Serafina's gross estate.

### A. *Standard of Review*

The executor appeals from the district court's grant of the government's motion for summary judgment. He contends that the court erred in granting the motion because questions of latent ambiguity in written instruments are questions of fact to be adjudicated by a jury.

A grant of summary judgment is subject to our de novo review. *Haluapo v. Akashi Kaiun, K.K.*, 748 F.2d 1363, 1364 (9th Cir. 1984). Our inquiry is governed by the same standard used by the district courts under Fed.R.Civ.P. 56(c). *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328 (9th Cir.1983). Summary judgment is appropriate when there are no genuine issues of material fact and the

---

1.  Paragraph nine provides in part:

    In addition to any inherent or implied or statutory powers my Executrix and/or Trustee may have in either capacity, I grant the following powers to such Executrix and Trustee and her successor: ...

    (b) During the continuance of the administration of my estate, and for the trust herein created, my Trustee shall own, control, possess and use the said trust estate and all property therein; shall collect and receive the rents, issues and profits thereof and shall ap-

    ply them to the uses and purposes of said trust; said Trustee is hereby empowered to sell, convey, lease, mortgage, hypothecate, encumber by deed of trust and/or convert the property of said trust as from time to time shall be deemed necessary or convenient; to invest and reinvest the trust estate in any property or securities ... hereby giving to my said Trustee every power and discretion in the management of the trust estate that she would have if she were the absolute, unqualified and unlimited owner thereof ...

moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Because the testator lived in California, California law governs the construction of his will. *See Helvering v. Stuart,* 317 U.S. 154, 162, 63 S.Ct. 140, 145, 87 L.Ed. 154 (1942); *Estate of McMillan v. Commissioner,* 670 F.2d 788, 789 n. 2 (8th Cir.1982). Under California law, the construction of a will is a question of law unless the construction turns on the credibility of extrinsic evidence. *Estate of Dailey,* 130 Cal.App.3d 993, 999, 182 Cal.Rptr. 95, 98 (1982); *see Estate of Russell,* 69 Cal.2d 200, 213, 70 Cal.Rptr. 561, 570, 444 P.2d 353, 362 (1968).

The district court concluded, after considering all the extrinsic evidence presented by the executor, that there was no ambiguity in the testator's will. The intent of the testator was found to be clear and unambiguous upon the face of the document. We affirm this finding.

Since no "uncertainty arises upon the face of the will" within the meaning of Cal.Prob.Code § 105,[2] any proferred evidence attempting to show an intention different from that expressed is inadmissible. *Estate of Russell,* 69 Cal.2d at 212, 70 Cal.Rptr. 561, 444 P.2d 353. Therefore, interpretation of the testator's will is a matter of law since it does not turn on extrinsic evidence and summary judgment is a proper means of adjudication in this case.

2. California Probate Code § 105 provides in part:
   [W]hen an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding the ... oral declarations [of the testator as to his intentions].

3. The term "general power of appointment" means a power exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—
   (A) A power to consume, invade, or appropriate income or property for the benefit of the decedent which is limited by an ascertain-

## B. *The Existence of a General Power of Appointment*

The executor argues that the language in the testator's will creating the trust did not expressly grant to Serafina a general power of appointment. If such a power might be implied, he argues, the will is latently ambiguous since this was not the testator's intent. The executor maintains that certain extrinsic evidence offered below proves that the testator intended that the trust could be invaded only for Serafina's support.

■ Our analysis begins by recognizing that state law determines the property rights and interests created by a will, but federal law determines the tax consequences of those rights and interests. *Morgan v. Commissioner,* 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 1035 (1940); *Little v. United States,* 704 F.2d 1100, 1105 (9th Cir.1983). No one disputes this principle.

■ The district court concluded that the will created a power of appointment under California law. The executor does not contest that conclusion on appeal. Rather, the issue on appeal is whether the power of appointment created by the will was a general power of appointment within the meaning of the federal estate tax law.

Section 2041 of the Internal Revenue Code includes within the gross estate of a decedent the value of property over which the decedent possessed a general power of appointment. Such a general power is defined by section 2041(b)(1), relevant portions of which are set forth in the margin.[3]

able standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.
. . . .
   (C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person—
. . . .
   (ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to the exercise of the power in favor of the dece-

Serafina's power of appointment is derived from paragraphs six and nine of the testator's will. Paragraph six provides that the trust was "for the benefit" of Serafina. In addition, paragraph nine grants extensive powers to Serafina as trustee to own, control, possess and use the trust assets, to collect and receive rents, issues and profits for the benefit of the trust, and to sell, convey, lease or mortgage property of the trust as deemed necessary or convenient.[4] Serafina's power to consume, invade, or appropriate property is limited only by the requirement that it be exercised for her "benefit."

The executor does not deny that "benefit" is not an "ascertainable standard" sufficient to bring the power within the exception stated in subsection 2041(b)(1)(A). *See, e.g., Lehman v. United States,* 448 F.2d 1318 (5th Cir.1971) (holding that the words "comfort" and "welfare" rendered a power of appointment general); Treas.Reg. § 20.2041-1(c)(2) (1954). Accordingly, Serafina power remains one exercisable in her favor, her estate, or the creditors of her estate.

■ Paragraph seven of the will states that "all provisions for support herein" shall take effect on the day of the testator's death and directs the executrix "to make the same provisions for the beneficiary [Serafina] as provided in said trust" during the probate administration of the estate. This does not alter the conclusion that Serafina's power was a general power. The purpose of paragraph seven was to free Serafina from the need to seek court-ordered maintenance pursuant to Cal.Prob. Code §§ 680–684 (West 1956).[5]

Nonetheless, the executor argues that the use of the "provisions for support" creates an ambiguity which requires that extrinsic evidence be examined to determine the testator's intent. The extrinsic evidence offered below, the executor insists, shows that the testator intended that

the trust could be invaded only for Serafina's support. Thus, her power was not general because limited by an "ascertainable standard."

We are not persuaded. The California Supreme Court in the leading case of *Estate of Russell,* 69 Cal.2d at 211, 70 Cal. Rptr. 561, 444 P.2d 353, explained the framework for interpreting a will:

> [E]xtrinsic evidence as to the circumstances under which a written instrument was made is "admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible" ..., and it is the instrument itself that must be given effect.... "If the evidence offered would not persuade a reasonable man that the instrument meant anything other than the ordinary meaning of its words, it is useless." ... On the other hand an ambiguity is said to exist when, in the light of the circumstances surrounding the execution of an instrument, "the written language is fairly susceptible of two or more constructions."

The court also indicated that "[a]ll parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole." Cal.Prob.Code § 103 (West 1956). Paragraphs six and seven of Jose Sr.'s will can easily be reconciled. By creating a trust for the "benefit" of Serafina, it is logical that the testator contemplated that funds for her "support" would come out of the trust. The term "support" can be read as referring to a portion of Serafina's "benefit" for which the trust was established. Considered separately, the two provisions are unambiguous. Construed together, the two provisions reflect no conflict. Accordingly, the will is not ambiguous.

The essence of the executor's argument is that the testator intended to create an arrangement that would allow the trust

---

dent—such power shall not be deemed a general power of appointment.

**4.** *See* footnote 1.

**5.** The district court found this to be the purpose of paragraph seven. The executor does not contest that finding.

assets to pass to the children without being taxed as part of Serafina's estate. In an affidavit, the attorney who drafted the testator's will stated that both he and the testator intended to limit Serafina's use of the trust assets to the funds necessary for her "support." In effect, the executor is urging this court to rewrite the will to effectuate the testator's intent. California law does not permit us to construe a will in that fashion.

> [W]hether or not resort is had to extrinsic evidence, the court must determine the intent of the testator from the language used. The court in interpreting the will may not decide what the testator should have done or even that the testator desired to accomplish a particular objective. The court only determines what the testator did do by the manner in which he expressed himself. In short, the court, under the guise of interpretation, may not write a will for the testator.

*Estate of Casey*, 128 Cal.App.3d 867, 871, 198 Cal.Rptr. 170, 172 (1982) (citations omitted); *see Estate of Cleaver*, 126 Cal. App.3d 341, 346, 178 Cal.Rptr. 729, 732 (1981). While it is possible the testator intended to limit Serafina's power over the trust assets by an ascertainable standard, he did not do so. Accordingly, the will should not be construed to limit Serafina's power to invade the trust assets to "support." The federal estate tax consequences must be determined on the basis of the testator's will as it is written, not on the basis of how it might have been written.

### C. *"Power of Attorney" Document*

▮ The executor also argues that the power of attorney document eliminated the general power of appointment by requiring that Serafina exercise the power only upon the authorization by a majority of her children. While it is true that the power of appointment would not have been general if that requirement had been in the testator's will, the subsequent creation of the requirement does not achieve the legal effect that the executor desires. Section 2041(a)(2) of the Code states that the decedent's gross estate includes the value of all property "with respect to which the decedent has at any time ... released [a general] power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under Sections 2035 to 2038, inclusive." The document constituted a release of Serafina's general power of appointment. *See* Treas.Reg. § 20.2041–3(d) (1954). Section 2036(a) states:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer ... under which he has retained for his life ...
>
> (1) the possession or enjoyment of, or the right to the income from, the property, or
>
> (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or income therefrom.

If the power of attorney document had been a transfer of property owned by Serafina, it is obvious that property would have been includible in Serafina's estate under section 2036(a). Her retained powers fit snugly within that section. Accordingly, the value of the trust assets is includible in Serafina's estate pursuant to section 2041(a)(2). The fact that Serafina perhaps was not aware that she had a general power of appointment when she executed the power of attorney document is irrelevant. Serafina had a general power of appointment regardless of whether she was aware of that fact. It follows that the property subject to the general power of appointment was includible in Serafina's gross estate both before and after the execution of the power of attorney document.

AFFIRMED.